*In re* MORRIS

Docket No. 312248. Submitted March 12, 2013, at Detroit. Decided March 21, 2013, at 9:10 a.m. Leave to appeal denied, 494 Mich 851.

The Department of Human Services (DHS) filed a temporary-custody petition in the Wayne Circuit Court, Family Division, seeking jurisdiction over C. I. Morris, a minor who was the daughter of N. Brumley (the mother) and D. Morris (the father), after the newborn tested positive for cocaine. At the preliminary hearing, both parents indicated that they had Indian heritage, but tribal notice of the action was not made in accordance with the notice provision of the Indian Child Welfare Act (ICWA), 25 USC 1912(a). The court, Mark T. Slavens, J., assumed jurisdiction over the child and subsequently terminated both parents' parental rights. The parents appealed, and the DHS raised sua sponte the insufficiency of the tribal notice and urged the Court of Appeals to conditionally affirm the termination but remand the matter so that proper notice could be provided to any interested tribe. The Court of Appeals, WHITBECK, P.J., and O'CONNELL and WILDER, JJ., affirmed the termination in an unpublished opinion per curiam, issued February 17, 2011 (Docket Nos. 299470 and 299471), without addressing the DHS's admission of error. The father applied for leave to appeal in the Supreme Court. In lieu of granting leave to appeal, the Supreme Court vacated the portion of the Court of Appeals' judgment that resolved his appeal and remanded the case to the Court of Appeals for resolution of the tribal-notice issue, retaining jurisdiction. 489 Mich 877 (2011). On remand, the Court of Appeals, in an unpublished opinion per curiam, issued May 19, 2011 (Docket Nos. 299470 and 299471), readopted its previous opinion with regard to termination of the father's parental rights, conditionally affirmed the termination of parental rights with regard to both parents, and remanded the case to the trial court for resolution of the notice issue. The Supreme Court then granted the father leave to appeal, limited to the issue whether conditional affirmance was an appropriate remedy. 489 Mich 957 (2011). The Supreme Court determined that conditional reversal was more consistent with ICWA and more deferential to tribal interests than conditional affirmance and overruled *In re IEW*, 233 Mich App 438 (1999), and its progeny,

adopting the conditional-reversal remedy for violations of ICWA's notice requirements. The Supreme Court reversed the Court of Appeals' judgment, conditionally reversed the trial court's termination of the father's parental rights, and remanded the case to the trial court for resolution of the ICWA notice matter, directing the trial court to ensure that the appropriate tribal entities received notice of the proceedings in compliance with ICWA. The Supreme Court emphasized that the trial court's order terminating parental rights would be reinstated if the trial court found that ICWA did not apply because (1) the child was not Indian or (2) the tribes receiving proper notice did not respond within the allotted time. 491 Mich 81 (2012). On remand, the DHS sent notices containing all the genealogical information it had been able to obtain from the parents to three federally recognized Indian tribes and the Bureau of Indian Affairs (BIA). The BIA indicated that it would take no further action, one tribe indicated that it would not intervene in the proceeding because it found no evidence that the child was a descendant of its band, and a second tribe did not respond. The Cherokee Nation stated that the information provided to it was not complete, to which the DHS replied that it was unable to obtain most of the additional information sought. The Cherokee Nation did not respond further. The trial court referee concluded that the DHS had complied with the notice requirements of ICWA. The trial court agreed with the referee's recommendation and entered an order reinstating its earlier order that terminated the father's parental rights, and he appealed.

The Court of Appeals *held*:

1. 25 USC 1912(a) provides that if a court knows or has reason to know that an Indian child is involved, no foster care placement or termination-of-parental-rights proceeding may be held until at least 10 days after receipt of notice of the proceeding by the parent or Indian custodian and the tribe or the Secretary of the Interior (in the form of the BIA in most instances). The father claimed on appeal that the DHS failed to make diligent efforts to obtain the information about his family that the Cherokee Nation had requested so that the tribe could determine the child's tribal eligibility or status. He argued that the ancestry information the DHS provided did not meet the BIA's guidelines or ICWA's requirements. There is no requirement under ICWA, the BIA's regulations, or Michigan caselaw, however, that the DHS conduct independent research to obtain a parent's detailed genealogical information, nor is there anything in the guidelines addressing genealogical information that should be included in the notice. The BIA's regulations, 25 CFR 23.11(a) and (d), require that the notice

include ancestry information if known. Similarly, the Supreme Court indicated that the trial court could direct the DHS to send a notice containing as much information as was reasonably available. The DHS gathered all the information that was reasonably available by interviewing both parents after they had been given an opportunity to confer with relatives. The father confirmed to the trial court that he had no further information to provide other than what had already been submitted to the tribes, and he did not move for reconsideration to present additional information. He neither claimed on appeal to have any additional information to give the tribes nor identified where he could get more information. Because all known information was provided to the tribes and the father did not show that any new information was available or would result in a different tribal determination, he did not demonstrate error requiring reversal.

2. The DHS was not responsible for locating information that the father was unable to find. 25 USC 1912(a) does not require that a detailed family tree be provided. Nothing in the record indicated that the child was eligible for membership in an Indian tribe, and both the DHS and the trial court satisfied their obligations under ICWA. The burden then shifted to the father to prove that ICWA nonetheless applied, which he failed to do. Since he could not obtain any additional information regarding his relatives, it would have been unreasonable to expect the DHS to find it. Imposing this burden on the DHS would also encourage parents, who can best research their own ancestry, to delay the proceedings by providing limited information. Because it would often take a long time to uncover ancestry details, a requirement that notices include every detail of a child's ancestry would also undermine ICWA's 10-day-response provision, which prevents unreasonable delays. The trial court did not err by finding that there was compliance with ICWA's notification requirements.

3. There was no error in the trial court's determination under MCL 712A.19b(5) that termination was in the child's best interests. The issue of the child's best interests was not properly before the Court of Appeals in this appeal because it was outside the scope of the Supreme Court's limited remand. The Court of Appeals had already determined that the trial court did not err by finding that termination of parental rights was in the child's best interests, and the Supreme Court had agreed. A remand to ensure proper notice under ICWA that does not lead to any evidence that ICWA applies does not unravel a best-interest determination.

4. The father's due process rights were not violated. Due process is about fundamental fairness. Due process in civil cases

requires that a party have the chance to know and respond to the evidence. The father was able to participate in the proceedings and was informed that the Cherokee Nation had requested more information about his family history well in advance of the hearing. He never claimed that he had any new information to provide the tribe and did not present any on appeal. Notice under ICWA does not require the trial court or the DHS to demand a response from the tribes notified. In this case, notice to the tribes was properly provided under ICWA, no tribe sought a request for more time to prepare for the proceedings, and the father was given ample time to investigate, uncover, and provide any family information that he could.

Affirmed.

CHILD CUSTODY — INDIAN CHILD WELFARE ACT — NOTICE TO TRIBES — REQUIREMENTS.

The Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.*, provides that if a court knows or has reason to know that an Indian child is involved, no foster care placement or termination-of-parental-rights proceeding may be held until at least 10 days after receipt of notice of the proceeding by the parent or Indian custodian and the tribe or the Secretary of the Interior; the applicable regulations require that the notice include ancestry information if known, but the regulations and applicable guidelines do not address genealogical information that should be included in the notice, and a detailed family tree need not be provided; there is no requirement that the Department of Human Services (DHS) conduct independent research to obtain a parent's detailed genealogical information, and the DHS is not responsible for locating information that a parent is unable to find; if both the DHS and the trial court satisfy their notice obligations under ICWA and nothing in the record indicates that the child is eligible for membership in an Indian tribe, the burden shifts to the parent to prove that ICWA nonetheless applies (25 USC 1912[a]; 25 CFR 23.11[a], [d]).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Richard A. Bandstra*, Chief Legal Counsel, and *Jonathan E. Duckworth*, Assistant Attorney General, for the Department of Human Services.

*Steven A. Menken* for D. Morris.

*Judith T. New* for C. I. Morris.

Before: MURPHY, C.J., and O'CONNELL and BECKERING, JJ.

PER CURIAM. Respondent appeals by right the trial court's order terminating his parental rights to the minor child. Because the trial court correctly determined that proper notice was given as required by the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.*, and that ICWA does not apply to this child-custody proceeding, we affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case has a rather extensive history in the appellate system. In July 2010, following a termination hearing, the trial court terminated respondent's parental rights, as well as the rights of the minor child's mother. On February 17, 2011, this Court issued an opinion per curiam affirming the trial court's order terminating parental rights. *In re Morris*, unpublished opinion per curiam of the Court of Appeals, issued February 17, 2011 (Docket Nos. 299470 and 299471).

Acting *in propria persona*, respondent filed an application for leave to appeal in the Michigan Supreme Court. On April 22, 2011, the Supreme Court vacated the part of this Court's judgment that resolved respondent's appeal and remanded the case to this Court for reconsideration of respondent's appeal in light of petitioner's confession of error regarding the failure of petitioner and the trial court to comply with the notice requirements of ICWA. *In re Morris*, 489 Mich 877 (2011).

On May 19, 2011, this Court readopted, but conditionally affirmed, the order terminating respondent's parental rights and remanded the case to the trial court for proper notice consistent with ICWA and for further

proceedings as necessary and consistent with the opinion. *In re Morris (On Remand)*, unpublished opinion per curiam of the Court of Appeals, issued May 19, 2011 (Docket Nos. 299470 and 299471).

On June 22, 2011, the Supreme Court, noting that it had retained jurisdiction in its April 22, 2011, order, issued an order granting respondent's application for leave to appeal, "limited to the issue whether the Court of Appeals' 'conditional affirmance' remedy is an appropriate method of resolving an ICWA violation." *In re Morris*, 489 Mich 957 (2011). On May 4, 2012, the Supreme Court determined that a conditional reversal was more consistent with the text of ICWA than conditional affirmance and more deferential to tribal interests. *In re Morris*, 491 Mich 81, 121; 815 NW2d 62 (2012). Overruling *In re IEM*, 233 Mich App 438; 592 NW2d 751 (1999), and its progeny, the Court adopted the conditional-reversal remedy for violations of the ICWA notice requirements. *Morris*, 491 Mich at 121. The Court reversed this Court's judgment, conditionally reversed the trial court's termination of respondent's parental rights, and remanded the case to the trial court for resolution of the ICWA notice matter. *Id.* at 122. The Court directed the trial court to ensure that the appropriate tribal entities receive notice of the proceedings in compliance with ICWA.[1] *Id.* at 123. The Court emphasized that the trial court's order terminating parental rights would be reinstated if the trial court found that ICWA does not apply because (1) the minor child is not Indian or (2) the properly noticed tribes do not respond within the allotted time. *Id.*

---

[1] Both respondent and the minor child's mother informed the trial court at the December 11, 2008, preliminary hearing that they had Cherokee Indian heritage, which the Supreme Court deemed sufficient to trigger the tribal-notice requirement of ICWA. *Morris*, 491 Mich at 109.

On June 4, 2012, the trial court referee held a hearing to comply with the Supreme Court's directives. Petitioner produced and admitted into evidence copies of notices it intended to send to three federally recognized Cherokee Indian tribes (United Keetoowah Band of Cherokee Indians in Oklahoma, Eastern Band of Cherokee Indians, and the Cherokee Nation) and the Department of the Interior's Bureau of Indian Affairs (BIA) Midwest Regional Office.[2] Emiline Reyst, the adoption caseworker tasked with issuing the notices, advised the court that the notices contained all the genealogical information she had been able to obtain from respondent and the minor child's mother.[3] The referee continued the hearing for six weeks and directed petitioner to continue to make efforts to comply with ICWA.

---

[2] The notices contain genealogical information including the minor child's full name, date and place of birth, and claimed heritage as a Cherokee Indian; respondent's full name, date and place of birth, address, and claimed heritage as a Cherokee Indian; the mother's full name, date and place of birth, address, and claimed heritage as a Cherokee Indian; the paternal grandfather's full name, date and place of birth, date and place of death, and claimed heritage as a Cherokee Indian; the paternal grandmother's name and date and place of birth, the fact that she is deceased, her place of death, and an acknowledgement that she was not a Native American; the maternal grandfather's full name, date of birth, city and state of residence, and claimed heritage as a Cherokee Indian; the maternal grandmother's name, including her maiden name, and an acknowledgment that she is not a Native American; a paternal great-grandfather's name, place of birth, place of death, and claimed heritage as a Native American; a paternal great-grandmother's name, place of birth, and place of death and an acknowledgement that she was not a Native American; and a maternal great-grandmother's name, place of death, and claimed heritage as a Native American.

[3] Respondent and his attorney attended the hearing. The attorney for the minor child's mother also attended; however, the mother did not. Reyst advised the court that she had sent out 16 letters to as many addresses trying to find the mother and finally connected with her by telephone on May 30, 2012, at which point the mother gave Reyst "everything she knew" about the child's Indian heritage.

On July 16, 2012, the trial court reconvened for a continued hearing on the ICWA conditional reversal. Petitioner produced and admitted into evidence "a thick stack of documents" that included copies of the notices that were sent to the tribes, registered-mail return receipts and other proof of service to show that all the notices were mailed on June 4, 2012, and received by the recipients by June 8, responses received from the tribes, and other correspondence between the case-worker and the tribes.

The records submitted by petitioner reveal that the BIA responded to the notice and indicated that it would take no further action because the appropriate tribe was notified. The United Keetoowah Band of Cherokee Indians in Oklahoma also responded and indicated that it did not intend to intervene in the case because it found no evidence that the child was a descendant of its band. The Eastern Band of Cherokee Indians received the notice but did not initially respond. The Cherokee Nation responded in a June 14, 2012, letter, indicating that the information provided was "not complete" and did not meet the BIA guidelines. It requested further information in order to verify Cherokee heritage, including the middle names of the paternal relatives, birthdays of everyone involved and their relationship to the child, and the maiden names of the women listed. Reyst attempted to obtain the requested information from respondent, but respondent had no further information.[4] On June 22, 2012, Reyst sent an e-mail response to the Cherokee Nation explaining her efforts to obtain the additional information sought and indicating

---

[4] Reyst indicated to the court that she received the Cherokee Nation's letter on June 21, 2012, and called respondent that day to obtain the requested information. Respondent returned her call the same day and left a message indicating that he could not get the information because he had no one to get it from and had no knowledge of it.

that she was not able to provide it, other than the fact that the minor child's paternal great-grandfather had no middle name. In her e-mail, Reyst asked the Cherokee Nation to let her know if it needed anything else; she did not receive a response.

At the July 16, 2012, hearing, the referee confirmed with respondent that respondent had no further information to provide. The referee noted that more than 10 days had passed since Reyst's last communication with the Cherokee Nation and, thus, deemed petitioner to have complied with the notice requirements of ICWA.

Respondent's attorney indicated that he had just received the Cherokee Nation's letter that day and, if given more time, could conduct an investigation to see if he could obtain the requested information. Respondent's counsel argued that more time should be given to protect the respondent's due-process rights. The referee concluded that proper notice had been given and resulted in "absolutely no indication today, after ample notice and full compliance with the ICWA notice requirements, that [the minor child] is a member or eligible for membership in any Native American tribe to which ICWA would apply." The trial court agreed with the referee's recommendation and entered an order on August 9, 2012, reinstating its earlier order terminating respondent's parental rights.

On August 14, 2012, the trial court held a hearing at which it admitted into evidence a letter from the Eastern Band of Cherokee Indians.[5] The letter states that, given the information provided, the band did not intend to intervene because it did not consider the minor child to be an "Indian child" under ICWA.

---

[5] This Court does not have a transcript of the hearing because, apparently, no transcript has been created. Nevertheless, the parties do not contend that the hearing is pertinent to this appeal.

This Court reviews de novo questions of law involving the interpretation and application of ICWA. *In re JL*, 483 Mich 300, 318; 770 NW2d 853 (2009). This Court reviews for clear error a trial court's factual findings underlying the application of legal issues. *Morris*, 491 Mich at 97.

### III. ANALYSIS

As the Supreme Court previously noted in this matter, "before a state court can determine whether ICWA applies to the proceedings, the court must first make the critical determination whether the child is an 'Indian child.'" *Id.* at 99-100; see also MCR 3.965(B)(2). "[I]t is well established that only [an] Indian tribe can determine its membership. Therefore, when there are sufficient indications that the child may be an Indian child, the ultimate determination requires that the tribe receive notice of the child custody proceedings, so that the tribe may advise the court of the child's membership status." *Morris*, 491 Mich at 100 (citation omitted). In this case, both respondent and the minor child's mother informed the trial court at the December 11, 2008, preliminary hearing that they had Cherokee Indian heritage, which the Supreme Court deemed sufficient to trigger the tribal-notice requirement of ICWA. *Id.* at 109.

The notice provision of ICWA provides:

> In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention.

If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary[6] in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. *No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary*: *Provided*, That the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding. [25 USC 1912(a) (emphasis before colon added).]

In his brief on appeal, respondent claims for the first time that petitioner failed to make diligent efforts to obtain the information about his family that was requested by the Cherokee Nation so that the tribe could determine the minor child's tribal eligibility or status. Respondent argues that the ancestry information provided by petitioner did not meet the BIA guidelines or the requirements of ICWA. These contentions are unsupported by the law. There is no requirement under ICWA, the BIA's regulations, or Michigan caselaw that petitioner conduct independent research to obtain a parent's detailed genealogical information. There is nothing in the guidelines addressing genealogical information that should be included in the notice. The BIA adopted regulations requiring notice to include ancestry information *if known.* 25 CFR 23.11(a) and (d). Similarly, the Supreme Court in this case noted that a trial court could direct the petitioner "to compose and send notice containing as much information as is *reasonably available . . . ." Morris*, 491 Mich at 124 (emphasis added).

---

[6] " 'Secretary' is defined as 'the Secretary of the Interior.' 25 USC 1903(11). Pursuant to 25 CFR 23.11(b) and (c)(2), when notice to the Secretary of the Interior is required under 25 USC 1912(a) for proceedings in Michigan, it is actually sent to the Minneapolis Area Director, Bureau of Indian Affairs." *Morris*, 491 Mich at 103 n 14.

The record reveals that petitioner gathered all the information that was reasonably available by interviewing both respondent and the child's mother after they were given an opportunity to confer with relatives. Reyst interviewed respondent several times about his ancestry, and respondent confirmed to the court that he had no further information to provide other than what had already been submitted to the tribes. Respondent did not move the trial court for reconsideration to present additional information. And now, on appeal, respondent neither claims to have any additional information to provide to the tribes nor identifies where he can get more information. Because all known information was provided to the tribes and respondent has not shown that any new information is available or would result in a different tribal determination, respondent has not shown error requiring reversal.

Respondent's argument that petitioner is responsible for locating information that he has been unable to find is unpersuasive. The notice requirement of 25 USC 1912(a) does not require that a detailed family tree be provided. There is nothing in the record to indicate that the minor child is eligible for membership in an Indian tribe, and both petitioner and the trial court satisfied their obligations under ICWA. The burden then shifted to respondent to prove that ICWA nonetheless applied, which he failed to do. See *In re TM (After Remand)*, 245 Mich App 181, 187; 628 NW2d 570 (2001) ("If proper notice is provided and a tribe fails to either respond or intervene in the matter, the burden shifts to the parties (i.e., the parents) to show that the ICWA still applies."), overruled on other grounds by *Morris*, 491 Mich 81; see also *IEM*, 233 Mich App at 449 (" 'Only after notice has been provided and a tribe has failed to respond or has intervened but is unable to determine the child's eligibility for membership does the burden shift to the

parties to show that the ICWA still applies.' ") (citation omitted), overruled on other grounds by *Morris*, 491 Mich 81. Since respondent could not obtain any additional information regarding his relatives, it would be unreasonable to expect petitioner to find it. Imposing this burden on petitioner would also encourage parents, who can best research their own ancestry, to delay the proceedings by providing limited information. Because it would often take a long time to uncover ancestry details, a requirement that ICWA tribal notices include every detail of a child's ancestry would undermine ICWA's 10-day provision, which prevents unreasonable delays. It would also jeopardize concepts of permanency and finality. The trial court did not err by finding that there was compliance with ICWA's notification requirements.

Respondent also argues that it was not in the child's best interests to terminate respondent's parental rights under MCL 712A.19b(5). He claims that because the ICWA notice violation delayed the child's permanency, that delay was contrary to the child's best interests. Respondent asserts that ICWA's remedy provisions permit him to petition for invalidation of court orders entered in violation of ICWA's notice requirement; thus, he requests that the case be remanded to determine whether the minor child is an Indian child. However, respondent has not established that ICWA's notice requirement was violated on remand or that ICWA actually applies to the minor child. Moreover, the issue of the minor child's best interests is not properly before this Court because it is outside the scope of the Supreme Court's limited remand. This Court already determined that the trial court did not err by finding that termination of respondent's parental rights was in the child's best interests, and the Michigan Supreme Court agreed. Thus, there was no error in the trial court's best-interest determination. A remand to en-

sure proper notice under ICWA that does not lead to any evidence that ICWA applies does not unravel a best-interest determination.

Finally, respondent argues that his due-process rights were violated when he was unable to obtain an adjournment at the July 16, 2012, hearing in order to obtain additional information. Respondent's argument lacks merit. Due process is about fundamental fairness. *In re Beck*, 287 Mich App 400, 401-402; 788 NW2d 697 (2010). Due process in civil cases requires that a party have the chance to know and respond to the evidence. *Traxler v Ford Motor Co*, 227 Mich App 276, 288; 576 NW2d 398 (1998). Respondent was able to participate in the proceedings and was informed that the Cherokee Nation had requested more information about his family history on June 21, 2012 (the same day the caseworker received the request for information), well in advance of the July 16, 2012, hearing. Respondent has never claimed to have had any new information to provide the tribe, and he does not present any on appeal. Furthermore, Reyst responded to the Cherokee Nation's request for more information on June 22 and clarified that she had nothing more to provide, at which time the Cherokee Nation took no further action. Notice under ICWA does not require the court or petitioner to demand a response from the tribes notified. Notice to the tribes was properly provided under ICWA, no tribe sought a request for more time to prepare for the proceedings, and respondent was given ample time to investigate, uncover, and provide any family information that he could. Thus, there was no due-process violation.

Affirmed.

MURPHY, C.J., and O'CONNELL and BECKERING, JJ., concurred.