# STATE OF MICHIGAN

# COURT OF APPEALS

In re J. KETTLE, Minor.

UNPUBLISHED
August 11, 2015

No. 325044
Kalamazoo Circuit Court
Family Division
LC No. 2009-000358-NA

Before: METER, P.J., and CAVANAGH and WILDER, JJ.

PER CURIAM.

Respondent father appeals as of right the trial court's order terminating his parental rights to a minor child under MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions leading to adjudication), (c)(*ii*) (failure to rectify other conditions), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood that child will be harmed if returned to the parent).[1] We affirm.

Father first argues that the Department of Human Services (DHS) and the trial court failed to comply with the notice requirements of the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.*, and the Michigan Indian Family Preservation Act (MIFPA), MCL 712B.1 *et seq.* We disagree. We review this unpreserved issue for plain error affecting substantial rights, i.e., affecting the outcome of the proceedings. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011); *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

ICWA and MIFPA each establish various substantive and procedural protections where an Indian child[2] is involved in a child protective proceeding. In pertinent part, ICWA and MIFPA each require that the relevant Indian tribe be notified by registered mail, return receipt

---

[1] The trial court also terminated respondent-mother's parental rights to the child. She has not appealed.

[2] Under ICWA, an "Indian child" is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" 25 USC 1903(4). MIFPA more broadly defines "Indian child" to include a child "[e]ligible for membership in an Indian tribe as determined by that Indian tribe," without reference to whether the parent is a member. MCL 712B.3(k)(*ii*).

-1-

requested, where there is "reason to know" that an Indian child may be involved in the child protective proceeding. 25 USC 1912(a); MCL 712B.9(1). The "reason to know" standard has been held by the Michigan Supreme Court to "set a rather low bar" for triggering the notice requirement. *In re Morris*, 491 Mich 81, 105; 815 NW2d 62 (2012). In other words, "sufficiently reliable information of virtually any criteria on which membership might be based is adequate to trigger the notice requirement[.]" *Id*. at 108.

There is no question that the ICWA and MIFPA notice requirements were triggered early in these proceedings when father indicated at an April 2013 preliminary hearing that he might have some family membership—specifically, through his brother—in the "Chippewa tribe." There is some indication in the record that respondent-mother also claimed potential Indian heritage, although it is unclear what tribes, if any, she identified. Because "sufficiently reliable information" of possible Indian heritage was provided, the trial court had "reason to know" that an Indian child could be involved, thus triggering the ICWA and MIFPA notice requirements. 25 USC 1912(a); MCL 712B.9(1); *In re Morris*, 491 Mich at 109.

The record indicates that DHS sent notifications to several different tribes, including the Eastern Band of Cherokee Indians, the United Keetoowah Band of Cherokee, the Cherokee Nation, the Sault Ste. Marie Tribe of Chippewa Indians, and the Pokagon Band of Potawatomi Indians. DHS also sent a notification to the Midwest Bureau of Indian Affairs. On June 18, 2013, both the Eastern Band of Cherokee Indians and the Sault Ste. Marie Tribe of Chippewa Indians responded and indicated that the child was not eligible for membership. The Cherokee Nation also responded with a request for more family information, although there is no indication that further information was thereafter provided. There is also no indication that the remaining tribes or the Bureau of Indian Affairs responded. Based on the responses that had been received, the trial court indicated at a November 2013 review hearing that the ICWA/MIFPA inquiry was "at an end."

We conclude that the record sufficiently evidences DHS's compliance with the ICWA and MIFPA notice requirements. DHS sent notifications to several tribes, as well as the Bureau of Indian Affairs. On appeal, father does not identify any other tribes that should have been notified. Moreover, while father takes issue with the fact that DHS apparently never provided further information to the Cherokee Nation, he does not identify what further information could have been provided, nor does he argue that he provided the information requested to DHS but that DHS failed to forward it to the Cherokee Nation. Moreover, we note that DHS does not have an affirmative responsibility "to conduct independent research to obtain a parent's detailed genealogical information." *In re Morris (On Remand)*, 300 Mich App 95, 105; 832 NW2d 419 (2013). Finally, despite father's argument to the contrary, the trial court did in fact make a conclusive determination that the child was not an Indian child by noting that the issue was "at an end" and by leaving unchecked, in its subsequent orders, the box indicating that the proceedings involved an Indian child. There was no plain error affecting substantial rights.

Father next argues that the trial court violated his rights under the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq*., when it ordered him to cease using marijuana altogether despite the fact that he had a medical marijuana card. We again review this unpreserved claim for plain error affecting substantial rights. *In re VanDalen*, 293 Mich App at 135.

-2-

Assuming that father was indeed a medical marijuana user, and further assuming (without deciding) that the trial court was without authority to order him to cease his marijuana use, father has not demonstrated that this alleged error affected his substantial rights. For all intents and purposes, father's marijuana use was not a major issue in this case; indeed, the trial court did not even cite father's marijuana use as a factor supporting termination of father's parental rights.[3] Instead, the primary bases for the trial court's determination were father's continued methamphetamine and alcohol use, his continued inability to establish a safe, clean living environment for the child, and his continued inability to demonstrate adequate parenting skills commensurate with the child's special needs. Reversal is not warranted.

Father finally argues that his trial counsel was ineffective for failing to object to the trial court's order that he stop using marijuana and for "allowing" him to admit, at the adjudication hearing, that he had been under the influence of marijuana while acting as the child's sole caregiver. Because no evidentiary hearing was held on father's claims, our review is limited to errors apparent in the lower court record. *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

"Although the constitutional provisions explicitly guaranteeing the right to counsel apply only in criminal proceedings, the right to due process also indirectly guarantees assistance of counsel in child protective proceedings. Thus, the principles of effective assistance of counsel developed in the context of criminal law apply by analogy in child protective proceedings." *In re CR*, 250 Mich App 185, 197-198; 646 NW2d 506 (2002), overruled on other grounds by *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014). To prevail on a claim of ineffective assistance of counsel, a respondent must establish that (1) his trial counsel's performance was deficient and (2) the deficient performance prejudiced him. *In re CR*, 250 Mich App at 198. "Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise." *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010).

With respect to father's first claim of ineffective assistance of counsel, that his attorney failed to object to the trial court's order that he cease using marijuana, father has failed to demonstrate that any deficiency by his attorney in this regard prejudiced him where father's marijuana use had little, if any, bearing on the trial court's determination that the statutory grounds for termination were established.

With respect to father's second claim of ineffective assistance of counsel, that his attorney "allowed" him to admit that he had been under the influence of marijuana while taking care of the child, father has failed to establish a factual predicate for his claim. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). In essence, father's claim relates to the advice given him by his attorney regarding the propriety of admitting the allegations in the petition.

---

[3] Father argues on appeal that "[a]s a result of . . . [f]ather's inability to use marijuana it appears that he turned to self-medication with alcohol and street drugs to deal with his pain." This argument is entirely speculative and we give no credence to it. We note that, with regard to methamphetamine use, father testified at the termination hearing that he had relapsed out of "discourage[ment]" and that he was "an addict."

However, it is not apparent from the record what advice, if any, father's attorney gave him. Thus, father's claim is untenable. *Id.*; *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). In any event, father has failed to overcome the presumption that any advice given to him was the product of reasonable trial strategy. Father's attorney may have advised father to admit the allegation in light of the caseworker's testimony at a previous hearing indicating that father had admitted smoking an "excessive" amount of marijuana while caring for the child.[4] We find no basis for reversal.

Affirmed.


/s/ Patrick M. Meter
/s/ Mark J. Cavanagh
/s/ Kurtis T. Wilder

---

[4] According to the caseworker, father stated that he smoked the "excessive amount" because he was "stressed out following [an] argument" with the child's mother.