# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* HODGE, Minors.

UNPUBLISHED
January 18, 2018

No. 338894
Wayne Circuit Court
Family Division
LC No. 14-516005-NA

Before: JANSEN, P.J., and FORT HOOD and RIORDAN, JJ.

PER CURIAM.

Respondent mother (respondent) appeals as of right the order terminating her parental rights to two of her sons, JH and PH,[1] pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood that child will be harmed if returned to parent).[2] We affirm.

On appeal, respondent argues that the trial court erred when it terminated her parental rights because it did not follow procedure required by the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.*, and the Michigan Indian Family Preservation Act, MCL 712B.1 *et seq.* Respondent argues that petitioner, the Department of Health and Human Services (DHHS), did not make "active efforts" to provide remedial services and rehabilitative programs to respondent to prevent the removal of her children, 25 USC 1912(d); MCL 712B.15(3), or consider the testimony of a qualified expert witness to determine whether reunification would result in emotional or physical harm to the children, 25 USC 1912(f); MCL 712B.15(4). However, as will be discussed herein, the trial court complied with the ICWA notice procedures and properly determined that the ICWA did not apply. Thus, the trial court was not required to follow these ICWA procedures prior to terminating respondent's parental rights.

Generally, legal issues involving the application and interpretation of the ICWA are reviewed de novo. *In re Morris*, 491 Mich 81, 97; 815 NW2d 62 (2012). "Any underlying

---

[1] Respondent mother has a third son, AH, who was released from the first petition to terminate respondent's parental rights because he has been in the care of a guardian for all of his life. Respondent's parental rights to AH are not at issue in this appeal.

[2] The parental rights of BH, the legal father of JH and putative father of PH, were terminated in a different order, and he is not a party to this appeal.

-1-

factual findings are reviewed for clear error." *In re Johnson*, 305 Mich App 328, 331; 852 NW2d 224 (2014). Because respondent did not raise the issues of active efforts or a qualified expert in the trial court, review is for plain error affecting respondent's substantial rights. *In re Utrera*, 281 Mich App 1, 8-9; 761 NW2d 253 (2008). "[A]n error affects substantial rights if it caused prejudice[,] i.e., it affected the outcome of the proceedings." *Id.* at 9. "[R]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant *or* when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* at 9 (quotation marks and citations omitted).

The ICWA and the MIFPA were enacted to protect the best interests of Native American children, and to promote the security and stability of Native American tribes and families. 25 USC 1902; MCL 712B.5(a); *In re England*, 314 Mich App 245, 250-251; 887 NW2d 10 (2016). Both the ICWA and the MIFPA provide substantive and procedural protections that apply when an Indian child is involved in child protective proceedings. *Id.* at 251. The ICWA defines "Indian child" as "any unmarried person who is under age [18] and is either (a) a member of an Indian tribe or (b) eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" 25 USC 1903(4). The MIFPA definition is similar, but "does not require the child who is eligible for membership to also be the biological child of a member of an Indian tribe." MCL 712B.3(k)(*ii*); *In re KMN*, 309 Mich App 274, 287; 870 NW2d 75 (2015). Only the Native American tribe can determine its membership. *In re Morris*, 491 Mich at 100. Thus, "when there are sufficient indications that the child may be an Indian child," notice must be given to the tribe so it can determine the child's membership status. *Id.* Regarding notice, the ICWA provides:

> In any involuntary proceeding in a [s]tate court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary . . . [25 USC 1912(a).]

The trial court has "reason to know" that an Indian child is involved when there is "sufficiently reliable information of virtually any criteria on which membership might be based[.]" *In re Morris*, 491 Mich at 108. This includes when the trial court is aware of information suggesting that the child, the child's parent, or members of the parent's family are tribal members. *Id.* at 108 n 18. Likewise, the MIFPA also requires notice:

> In a child custody proceeding, if the court knows or has reason to know that an Indian child is involved, the petitioner shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of

the pending child custody proceeding and of the right to intervene. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, notice shall be given to the secretary in the same manner described in this subsection. The secretary has 15 days after receipt of notice to provide the requisite notice to the parent or Indian custodian and the tribe. [MCL 712B.9(1).]

The trial court must keep records to show compliance with the notice provisions of the ICWA and the MIFPA. *In re Morris*, 491 Mich at 89, 114. "[T]rial courts have a duty to ensure that the record includes, at minimum, (1) the original or a copy of each actual notice personally served or sent via registered mail . . . and (2) the original or a legible copy of the return receipt or other proof of service showing delivery of the notice." *Id.* at 114. Absent such information, it cannot be discerned whether notice was sent, to what tribes it was sent, whether it was received, and whether it contained "sufficient, accurate information to enable the tribal authorities to determine tribal status of the child and the child's parents." *Id.* at 112-113.

At the March 14, 2014 preliminary hearing, DHHS informed the trial court that respondent claimed Cherokee, Blackfoot, and Blackfeet heritage. DHHS had already sent notices to six tribes, was in receipt of responses from three, and was waiting to hear from the others. Mail receipts of the notices were admitted as an exhibit. The preliminary hearing continued on March 28, 2014, and the trial court determined that the ICWA notices were finalized because responses were received, or at least 10 days had passed. The responses and registered mail receipts were admitted as an exhibit. Included in the exhibit were letters from the United Keetoowah Band of Cherokee Indians of Oklahoma and the Indian Child Welfare Act Program of the Blackfeet Tribe of Montana providing that there was no record of respondent or her family members in the tribal rolls, and therefore, the children were not "Indian children," and the tribes would not intervene.

At a pretrial hearing held on June 15, 2015, on the first petition filed for permanent custody, notice letters and a second response letter from the Blackfeet Tribe were admitted as an exhibit. The letter from the Blackfeet Tribe again provided that there was no record of respondent or her family members on the tribal roll. However, the foster care worker testified that she mailed the notices by certified mail, and the ICWA requires registered mail, so the trial court ordered that DHHS resend the notices. The evidentiary hearing on the first petition for permanent custody began on July 28, 2015, and the trial court found that the notices complied with the ICWA because the tribes were in possession of the notices for at least 10 days. The registered mail receipts were admitted as an exhibit.

The second petition for permanent custody was filed on January 6, 2017. It provided that respondent reported Native American heritage on February 11, 2014, and the ICWA notification was sent to the Blackfeet Tribe. Relying on the proceedings pertaining to the first petition, the second petition stated that the tribe denied heritage, so the trial court found that the ICWA did not apply. The evidentiary hearing began on March 7, 2017, wherein the trial court inquired whether respondent had Native American heritage, and she stated that her grandfather would have known the tribe, but he passed away. Respondent claimed it was the "Blackfoot" Tribe, but the ICWA lists a "Blackfeet" Tribe, and after an off-the-record discussion, the trial court ordered notice to the Blackfeet Tribe and the Bureau of Indian Affairs.

When the evidentiary hearing resumed on May 10, 2017, the trial court noted that the ICWA notices were sent, before it found that statutory grounds for termination existed. However, no exhibit was admitted into the record, and there are no ICWA documents in the lower court file or social file from this court date. When the trial court conducted the best interests portion of the proceedings on June 7, 2017, the trial court noted on the record, "[w]e do have some American Indian [h]eritage here[,] but not such that requires ICWA notices anymore." No documentation of the notices was admitted as an exhibit on this date either. The final order terminating respondent's parental rights provided, "Some American Indian heritage, but not the sort requiring ICWA notices."

In the proceedings pertaining to the first petition to terminate respondent's parental rights, the trial court complied with the ICWA in that notices were sent, responses were received, and documentation of such is included in the lower court record. The documentation in the social file includes denials of membership from the Blackfeet and Cherokee tribes. The trial court took judicial notice of the file containing this documentation when the evidentiary hearing on the second petition began. However, the trial court ordered that notices be resent to the tribes before the evidentiary hearing on the second petition began, because of a "late ICWA claim." It is unclear from the record why the trial court re-ordered notice, as there is no authority for the proposition that the circuit court must notify the tribe of each amended or subsequent petition filed regarding the same respondent. The statute only provides that when the court has reason to know that an Indian child may be involved, the petitioner is required to notify the tribe "of the pending proceedings and of their right of intervention." 25 USC 1912(a). Notably, this statute does not require that the petitioner send the tribe notice of each petition filed within the same proceeding.

There is no documentation of the resent notices in the lower court file, but as noted above, the ICWA was complied with in regard to the first petition. The tribes were sent notice by registered mail and either responded or 10 days passed before the next hearing took place. The trial court took judicial notice of these documents before the hearing on the second petition. Because petitioner is not required to send notice for each amended or subsequent petition, the initial compliance with the ICWA notice requirements from the first petition amply supports the trial court's conclusion that the requirements of the ICWA were satisfied. Where the tribes denied enrollment or did not respond, the trial court properly determined that ICWA did not apply. Thus, the record does not indicate that the children were eligible for membership in a Native American tribe. As petitioner and the trial court satisfied their obligations pursuant to the ICWA, "[t]he burden then shifted to respondent to prove that ICWA nonetheless applied[.]" *In re Morris*, 300 Mich App 95, 106; 832 NW2d 419 (2013). Respondent failed to do this. She did not argue in the trial court that the ICWA applied subsequent to the court's determination that it did not. In addition, respondent does not argue on appeal that the children were "Indian children" pursuant to the ICWA and she does not challenge the notice procedures pursuant to the ICWA or the MIFPA. Rather, her arguments on appeal are based on her assertion that the ICWA did apply, and that the trial court did not follow proper ICWA procedure (1) to determine whether active efforts were undertaken before parental rights were terminated and (2) in considering testimony from a qualified expert witness before terminating respondent's parental rights. However, as noted above, the trial court complied with the ICWA notice procedures, which did not trigger ICWA application. Therefore, the trial court was not required to comply

with the heightened ICWA procedure, including a determination that active efforts were made or that the testimony of a qualified expert witness was taken.

Affirmed.

/s/ Kathleen Jansen
/s/ Karen M. Fort Hood
/s/ Michael J. Riordan